IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIM HARDY and DARLENE HARDY,

      Plaintiffs,

   v.

COUNTY OF EL DORADO, DEPUTY
SHERIFF DAVID COOK, TONY'S TOW,
BONANZA AUTO DISMANTLERS, and
DOES 1 through 50,

      Defendants.

_____/

No. Civ. S-07-0799 RRB EFB

**Memorandum of Opinion**
**and Order**

    Plaintiffs Tim Hardy and Darlene Hardy (collectively "Plaintiffs") filed an action against the County of El Dorado ("County"), deputy sheriff David Cook ("Deputy Cook"), Tony's Tow and Transport ("Tony's Tow") and Bonanza Auto Dismantlers ("Bonanza") (collectively "Defendants") alleging civil rights violations and a state law claim arising out of the seizure and removal of vehicles from their property. Defendants now move separately to dismiss each and every claim in the First Amended

Complaint ("FAC") pursuant to Rule 12(b)(6).[1]  For the reasons stated below, the motions are **GRANTED in part and DENIED in part**.[2]

**I. BACKGROUND**

Plaintiffs are the owners of a fenced and gated hilly two-acre residential property located in El Dorado County at 9711 Highway 193, Kelsey, California.  FAC ¶ 1.  Plaintiff Mr. Hardy allegedly restores classic vehicles as a hobby and vocation. Id. ¶ 12.  Defendant Cook is a deputy sheriff for the County of El Dorado and was responsible for implementing the County's vehicle abatement program.  Id. ¶ 6.  Defendant Tony's Tow is a towing company that provided towing services in connection with the abatement of vehicles from Plaintiffs' property.  Id. ¶ 4. Defendant Bonanza is an auto wrecking yard that provided vehicle

---

[1] The County and Deputy Cook move together to dismiss the first, second, third, fourth, fifth and seventh claims for relief alleged in the FAC.  Tony's Tow moves to dismiss the first, fourth, fifth and sixth claims for relief alleged in the FAC. Bonanza moves to dismiss the fifth and sixth claims for relief alleged in the FAC.

[2] Inasmuch as the court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

abatement services in connection with the removal of vehicles from Plaintiffs' property.  Id. ¶ 5.

On or about April 26, 2005, Deputy Cook entered Plaintiffs' property without notice or an inspection warrant, and without Plaintiffs' consent or presence, for the purpose of inspecting a suspected nuisance condition.  FAC ¶ 11.  During the inspection, Deputy Cook placed County abatement notices on vehicular and non-vehicular items.  Id.  Deputy Cook did not question Mr. Hardy about the ownership of the vehicles, nor did he inquire into whether the vehicles were abandoned.  Id.[3]

On or about May 4, 2005, the County sent Plaintiffs a "Notice of Intention to Abate And Remove Abandoned, Wrecked, Dismantled, or Inoperative Vehicle or Parts Thereof as A Public Nuisance" ("Abatement Notice") pursuant to El Dorado County Ordinance 10.16.010.[4]  FAC ¶ 13, Exh. B.  The Abatement Notice

---

[3] Plaintiffs allege that the vehicles (and parts thereof) stored on their property are used for restoring classic vehicles and are neither "abandoned" nor are they "junk."  FAC ¶ 12.

[4] El Dorado County Ordinance 10.16.010 is authorized under California Vehicle Code § 22660.  FAC ¶ 3.  Section 22660 provides: "Notwithstanding any other provision of law, a city, county, or city and county may adopt an ordinance establishing procedures for the abatement and removal, as public nuisances, of abandoned, wrecked, dismantled, or inoperative vehicles or parts thereof from private or public property, and for the recovery, pursuant to Section 25845 or 38773.5 of the Government Code, or assumption by the local authority, of costs of administration and the removal."

advised Plaintiffs that the County would commence abatement of the vehicles listed and described in the attachment to the Abatement Notice if Plaintiffs failed to abate the vehicles or request a hearing within 10-days from May, 4, 2005. Id., Exhs. B, C.[5] On or about May 5, 2005, Deputy Cook entered Plaintiffs' property again for the purpose of inspecting a suspected nuisance condition without a warrant and without Plaintiffs' permission or consent. Id. ¶ 11.5.

On or about June 24, 2005, the County, through its towing contractor Tony's Tow, seized and removed approximately seventeen vehicles from Plaintiffs' property. FAC ¶ 14.[6] On or about August 9, 2005, Tony's Tow seized and removed approximately eighteen more vehicles from Plaintiffs' property

---

[5] Plaintiffs allege that the vehicles listed in the attachment to the Abatement Notice were not described in a consistent manner, nor were they described in a clear or accurate manner with respect to color and make. FAC ¶ 13. Plaintiffs further allege that the Abatement Notice did not describe how the condition of the vehicles violated the Vehicle Abatement Ordinance, nor did it specify how to avoid seizure and removal. Id.

[6] On June 28, 2005, Mr. Hardy requested an abatement hearing to address the County's nuisance determination and removal of vehicles from his property. FAC ¶ 14.5. At the July 20, 2005, hearing, the Vehicle Abatement Hearing Officer concluded that the vehicles on Plaintiffs' property were "abandoned" and posed a threat to public health, safety and welfare, in violation of the Vehicle Abatement Ordinance. Id. ¶ 14.6; Pl.'s Opp. to Def.'s Mtn. to Dismiss at 11:25-27, 12:1-11.

with an inspection warrant but without notice or Plaintiffs' consent. Id. ¶ 15.[7]

On or about August 31, 2005, Plaintiffs received a bill from the County in the amount of $4,982.00 purportedly representing the costs incurred in seizing and removing approximately thirty-five vehicles from Plaintiffs' property. FAC ¶ 16. Following Plaintiffs' refusal to pay this bill, the County brought a small claims action against Mr. Hardy seeking to recover its abatement costs. Id. ¶ 18. On October 17, 2006, judgment was entered against Mr. Hardy in the amount of $4,982.00, plus costs. Id. On April 12, 2007, the judgment was affirmed on appeal. Id. ¶ 18.

On April 26, 2007, Plaintiffs filed the instant action against Defendants alleging civil rights violations and a state law claim. Docket at 3. On November 17, 2007, Plaintiffs amended their Complaint. Docket at 31. The operative Complaint alleges the following civil rights claims under 42 U.S.C. § 1983: (1) unreasonable search and seizure;[8] (2) due process

---

[7] Plaintiffs allege that Tony's Tow subsequently sold some of the seized vehicles for less than market value in violation of Plaintiffs ownership rights and to avoid compliance with California vehicle code record keeping requirements. FAC ¶ 17.

[8] This claim for relief is alleged against the County, Deputy Cook and Tony's Tow.

violation;[9] (3) unlawful taking and substantive due process violation;[10] (4)unreasonable search and seizure, due process violation and unlawful taking;[11] (5) conspiracy;[12] and (6) declaratory relief.[13] FAC ¶¶ 20-40, 43-49. Additionally, Plaintiffs allege a state law intentional infliction of emotional distress claim.[14] Id. ¶¶ 41-42. Defendants now move separately to dismiss each and every claim in the FAC pursuant to Rule 12(b)(6).

## II. DISCUSSION

### A.   Rule 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal pursuant to Rule 12(b)(6) is appropriate where there is no cognizable legal

---

[9] This claim for relief is alleged against the County and Deputy Cook.

[10] This claim for relief is alleged against the County.

[11] This claim for relief is alleged against the County and Tony's Tow.

[12] This claim for relief is alleged against each and every defendant.

[13] This claim for relief is alleged against the County.

[14] This claim for relief is alleged against Tony's Tow and Bonanza.

theory or there is an absence of sufficient facts alleged to support a cognizable legal theory.  Id.  The issue is not whether a plaintiff is likely to succeed on the merits but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his or her claims.  De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).

In considering a Rule 12(b)(6) motion, the allegations in the complaint must be construed in the light most favorable to the plaintiff, Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995), and the court accepts all material allegations as true, as well as all reasonable inferences to be drawn from them.  Navarro, 250 F.3d at 732; Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Nor do courts assume the truth of legal conclusions merely because they are cast in the form of factual allegations,  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981), or that a plaintiff can prove facts different from those it has alleged.  Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, Inc., 459 U.S. 519, 526 (1983).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986); see Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004) (leave to amend should be granted unless amendment would be futile, i.e., the complaint can not be saved by amendment).

**B.   Rooker-Feldman Doctrine**

Defendants argue that dismissal of Plaintiffs' first (unreasonable search and seizure), second (due process violation), third (unlawful taking and substantive due process violation), fourth (unreasonable search and seizure, due process violation and unlawful taking), fifth (conspiracy) and seventh (declaratory relief) claims for relief is appropriate because the court lacks subject matter jurisdiction over these claims under the Rooker-Feldman doctrine.[15]

_____

[15] As an initial matter, because the question of whether the court lacks subject matter jurisdiction under the Rooker-Feldman doctrine should have been raised through a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, not a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court will treat the instant motion as one for dismissal under both Rule 12(b)(1) and Rule 12(b)(6). See Fed. R. Civ. P.

The <u>Rooker-Feldman</u> doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments. <u>Henrichs v. Valley View Development</u>, 474 F.3d 609, 613 (9th Cir. 2007); <u>Mothershed v. Justices of the Supreme Court</u>, 410 F.3d 602, 606 (9th Cir. 2005). <u>Rooker-Feldman</u>, is a narrow doctrine, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus., Corp.</u>, 544 U.S. 280, 284 (2005); <u>Lance v. Dennis</u>, 546 U.S. 459, 464 (2006); <u>Henrichs</u>, 474 F.3d at 613. The doctrine applies only in "limited circumstances," where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. <u>Lance</u>, 546 U.S. at 466; <u>see</u> <u>Noel v. Hall</u>, 341 F.3d 1148, 1163 (9th Cir. 2003); (where a federal plaintiff "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court," the federal plaintiff has made a forbidden de facto appeal of the state court judgment).

---

12(b)(1) (authorizing the court to dismiss an action for lack of subject matter jurisdiction).

The Ninth Circuit has described the role of the Rooker-Feldman doctrine in the federal system as follows: "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction."  Noel, 341 F.3d at 1164; see Jensen v. Foley, 295 F.3d 745, 747-48 (7th Cir. 2002) ("The Rooker-Feldman doctrine, generally speaking, bars a plaintiff from bringing a § 1983 suit to remedy an injury *inflicted by* the state court's decision. . . .  Preclusion, on the other hand, applies when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.") (emphasis in original)).[16]  The Rooker-Feldman doctrine does not override or supplant issue and claim preclusion doctrines.  Henrichs, 474 F.3d at 613 (citing Exxon Mobil, 544 U.S. at 284).  Thus, even if a federal suit is not

---

[16] "If there is simultaneously pending federal and state court litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-precluded under § 1738.  But in neither of these circumstances does Rooker-Feldman bar jurisdiction."  Noel, 341 F.3d at 1164.

barred by Rooker-Feldman, it might nonetheless be claim-precluded under res judicata principles. Maldonado v. Harris, 370 F.3d 945, 950 (9th Cir. 2004).

Based on the foregoing, the court concludes that the Rooker-Feldman doctrine does not deprive the court of subject matter jurisdiction over any of Plaintiffs' claims. This is because the legal injury asserted by Plaintiffs did not arise out of the state court small claims judgment or the state administrative abatement hearing but rather out of the conduct of Defendants (i.e., adverse parties). See Noel, 341 F.3d at 1163 ("where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather a legal injury caused by an adverse party, Rooker-Feldman does not bar jurisdiction.").

For this reason, the Rooker-Feldman doctrine does not bar subject matter jurisdiction over any of Plaintiffs' claims.

**C.   First Claim: Unreasonable Search and Seizure**

   **1. Collateral Estoppel**

The County, Deputy Cook and Tony's Tow argue that dismissal of Plaintiffs' Fourth Amendment claim is appropriate pursuant to the doctrine of collateral estoppel because Plaintiffs had a "full and fair" opportunity to litigate the issues raised by this claim in the administrative vehicle abatement hearing.

The doctrines of res judicata and collateral estoppel may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Azadpour v. Sun Microsystems, Inc., 2007 WL 988185, * 3-4 (N.D. Cal. 2007); see also Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) (res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)); Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (res judicata, normally an affirmative defense, may be upheld on a Rule 12(b)(6) motion "when all relevant facts are shown by the court's own records").

Under 28 U.S.C. § 1738, federal courts must give "full faith and credit" to judgments of state courts. "Section 1738 does not allow federal courts to employ their own preclusion rules in determining the preclusive effect of state judgments. 'Rather, it . . . commands a federal court to accept the rules chosen by the State from which the judgment is taken.'" Noel, 341 F.3d at 1166; Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996). The doctrines of collateral estoppel and res judicata apply in a § 1983 case to a state court judgment on a constitutional claim, assuming that the party against whom an earlier court decision is asserted had a full and fair opportunity to litigate the issue decided by the first court. Allen v. McCurry, 449 U.S. 90, 101 (1980). Federal courts "give

the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Lance, 546 U.S. at 466; Maldonado, 370 F.3d at 951.

Under California law, "collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." People v. Carter, 36 Cal. 4th 1215, 1240 (2005) (internal quotation marks omitted). "[O]nly issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine." Id. An issue was actually litigated if it was properly raised, by the pleadings or otherwise, and was submitted for determination, and was determined. Id. The party asserting collateral estoppel bears a "heavy" burden of proving the doctrine's factors. Kemp Bros. Const., Inc. v. Titan Elec. Corp., 146 Cal. App. 4th 1474, 1482 (2007).

Based on the foregoing principles, the court concludes that Defendants' have failed to meet their burden to demonstrate that the doctrine of collateral estoppel bars Plaintiffs' Fourth

Amendment claim.  In particular, Defendants' did not show that

any of the issues underlying Plaintiffs' Fourth Amendment claim

were raised, submitted for determination, or determined in the

abatement hearing.  A review of the abatement hearing transcript

reveals that the El Dorado County Zoning Administrator did not

address any Fourth Amendment issues during the abatement

hearing.[17]  Rather, the hearing addressed whether Plaintiff owned

---

[17] The district court takes judicial notice of the abatement
hearing transcript and the Zoning Administrator's Order.  The
County and Deputy Cook have supplied the court with a copy of
the transcript and the Zoning Administrator's notice of
determination and requested that the court take judicial notice
of these documents pursuant to Rule 201 of the Federal Rules of
Evidence.  Def.'s Request for Judicial Notice, Exhs. 5-A, 5-B, 6
(Docket at 12).  The court may take notice of facts that are
capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned.  Fed. R. Evid.
201(b).  Judicial notice is properly taken of transcripts,
orders and decisions made by other courts or administrative
agencies.  See Engine Mfrs. Ass'n v. South Coast Air Quality
Management Dist., 498 F.3d 1031, 1039 n.2 (9th Cir. 2007)
(taking judicial notice of oral argument transcript); Holder v.
Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial
notice of a state court decision and the briefs filed in that
court to determine if an issue was raised and decided by the
state court for res judicata purposes); In re American
Continental/Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537
(9th Cir. 1996) (when ruling on a Rule 12(b)(6) dismissal, a
district court may take into account judicially noticeable
materials such as publicly available records and transcripts
from judicial proceedings "in related or underlying cases which
have a direct relation to the matters at issue" without
converting the dismissal to a summary judgment.) rev'd on other
grounds sub nom. Lexecon Inc. v. Milberg Weiss Bershad Hynes &
Lerach, 523 U.S. 26 (1998); Papai v. Harbor Tug and Barge Co.,
67 F.3d 203, 207 n.5 (9th Cir. 1995), rev'd on other grounds,
520 U.S. 548 (1997) (taking judicial notice of a decision and
order of an Administrative Law Judge).

the subject vehicles, and whether the vehicles were "abandoned" in violation of the Vehicle Abatement Ordinance.   Indeed, the purpose of the abatement hearing was to determine whether the vehicles on Plaintiffs' property constituted a public nuisance in violation of El Dorado County Ordinance 10.16.010,[18] not whether Plaintiffs' Fourth Amendment rights were violated.   As such, Plaintiffs did not have a "full and fair" opportunity to litigate their Fourth Amendment claim in the earlier abatement proceeding.   Accordingly, Plaintiffs' Fourth Amendment claim is not barred by the doctrine of collateral estoppel.

For these reasons, dismissal of this claim is not appropriate.

## 2. Open Fields Doctrine

Alternatively, the County, Deputy Cook and Tony's Tow argue that dismissal of Plaintiffs' Fourth Amendment claim is appropriate because Plaintiffs do not have a reasonable

---

[18] El Dorado County Ordinance 10.16.080 states that the relevant facts and testimony in a vehicle abatement hearing include: "testimony on the condition of the vehicle or part thereof and the circumstances concerning its location on the private property or public property."   Because municipal ordinances are a proper subject for judicial notice, see Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006), the court takes judicial notice of El Dorado County Ordinance 10.16.010.

expectation of privacy in the area where their vehicles were removed from under the "open fields" doctrine.

"It is clear that the warrant requirement of the fourth amendment applies to entries onto private land to search for and abate suspected nuisances." <u>Conner v. City of Santa Ana</u>, 897 F.2d 1487, 1490 (9th Cir. 1990) (footnote omitted) (citing <u>Michigan v. Tyler</u>, 436 U.S. 499, 504-07 (1978)); <u>Schneider v. County of San Diego</u>, 28 F.3d 89, 91 (9th Cir. 1994).[19] Entry to abate a known nuisance also falls within the warrant requirement of the Fourth Amendment. <u>Conner</u>, 897 F.2d at 1490. It is also clear that the impoundment of an automobile is a seizure within the meaning of the Fourth Amendment. <u>See</u> <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 862 (9th Cir. 2005).

"[A]bsent exigent circumstances, 'officials engaged in the abatement of a public nuisance must have a warrant' to enter an enclosed backyard; 'it is the prospective invasion of constitutionally protected interests by an entry onto property and not the purpose of the entry which calls forth the warrant requirement.' " <u>Conner</u>, 897 F.2d at 1490-91; <u>see</u> <u>Schneider</u>, 28

---

[19] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

F.3d at 91 ("'[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant.'"); <u>see also Miranda</u>, 429 F.3d at 862 ("'A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions.'"). One exception to the warrant requirement is the "open fields" doctrine, which provides that the Fourth Amendment does not protect "open fields" from government interference or surveillance because individuals do not have a reasonable expectation of privacy in such areas. <u>See Schneider</u>, 28 F.3d at 91-2.[20]

In the present case, dismissal of Plaintiffs' Fourth Amendment claim is inappropriate because the FAC alleges

_____

[20] In <u>Schneider</u>, the Ninth Circuit held that the warrantless entry onto private property not being used as the plaintiff's home, to tow several dilapidated vehicles, was analogous to a warrantless seizure of automobiles on public streets and did not require a warrant. <u>Schneider</u>, 28 F.3d at 91-3. Because the warrantless seizure did not impinge on any legitimate privacy interest, the court held that the previously held abatement hearing was sufficient to establish the validity and reasonableness of the seizure. <u>Id.</u> <u>Schneider</u> is distinguishable from the instant case insofar as the subject vehicles in that case were visible from a public road and were seized from a property where the plaintiff did not reside. Here, the subject vehicles were seized from Plaintiffs' primary residence and only some of the vehicles were visible to the public. As such, construing the allegations in the Complaint in the light most favorable to Plaintiffs, <u>Schneider</u> does not compel dismissal of Plaintiffs' Fourth Amendment claim at this stage in the litigation.

sufficient facts to state a cognizable Fourth Amendment claim. In particular, the FAC alleges that the County and Deputy Cook violated Plaintiffs' Fourth Amendment rights when Deputy Cook entered Plaintiffs' fenced and gated property on or about April 26, 2005, and on or about May 5, 2005, for the purpose of inspecting a suspected nuisance condition without an inspection warrant and without Plaintiffs' consent or permission.   FAC ¶ 21.5.   The FAC further alleges that the County, Deputy Cook and Tony's Tow violated Plaintiffs' Fourth Amendment rights on June, 24, 2005, when Tony's Tow entered Plaintiffs' property and seized Plaintiffs' vehicles without an inspection warrant and without Plaintiffs' consent or permission.   Id. ¶ 22.   Finally, the FAC alleges that the County, Deputy Cook and Tony's Tow violated Plaintiffs' Fourth Amendment rights in August 2005, when Deputy Cook and Tony's Tow entered Plaintiffs' property and seized vehicles with an inspection warrant but without Plaintiffs' presence as required by the warrant.   Id. ¶ 23. Such pleading is sufficient to survive a motion to dismiss.   See Conner, 897 F.2d at 1491-2 (the Fourth Amendment protected plaintiffs from the City's warrantless entry onto their property and from the warrantless seizure of their automobiles because they had a reasonable expectation of privacy in their enclosed, fenced private yard).

While the County, Deputy Cook and Tony's Tow argue that dismissal is appropriate because Plaintiffs did not have a reasonable expectation of privacy in the area where their vehicles were taken from based on the "open fields" doctrine, the court finds that this argument is more appropriately addressed in a motion for summary judgment.[21]   This is because the applicability of the "open fields" doctrine is a fact-intensive inquiry that requires the evaluation of evidence outside the pleadings.[22]   As such, resolution of this fact-specific issue is more appropriately addressed at the summary judgment stage of the litigation.

For these reasons, dismissal of this claim is inappropriate.

---

[21]   The FAC alleges that Plaintiffs' property is a fully fenced and gated residential property that is hilly and covered with trees and other vegetation.   FAC ¶ 1.   The FAC further alleges that "[n]ot all of the vehicles parked on the property could be seen from the highway below."   Id. ¶ 11.   Such allegations are sufficient to avoid dismissal since it is unclear from the face of the Complaint whether Plaintiffs' expectation of privacy was insufficient to support a cognizable Fourth Amendment claim under the "open fields" doctrine.

[22]   The Fourth Amendment protects the home and its curtilage (i.e., the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life), but not the "open fields." United States v. Dunn, 480 U.S. 294, 307 (1987).   In Dunn, the Court explained that "curtilage questions are often resolved through evaluation of four factors: 'the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.'" Id.

**D.    Second Claim: Due Process Violation**

The County and Deputy Cook argue that dismissal of Plaintiffs' due process claim is appropriate because Plaintiffs were given sufficient notice of the County's determination that a nuisance condition existed on their property and were provided an opportunity to be heard regarding this determination, i.e., Plaintiffs were afforded an opportunity to be heard at a meaningful time and in a meaningful manner regarding the County's nuisance determination before being deprived of their vehicles.

"'Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause.'" Schneider, 28 F.3d at 92.   The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner before the government deprives a person of a protected liberty or property interest.  Conner, 897 F.2d at 1492; Schneider, 28 F.3d at 92; Brock v. Roadway Exp., Inc., 481 U.S. 252, 261 (1987).   "For the notice to satisfy due process, it must 'be of such nature as reasonably to convey the required information.'"  Schneider, 28 F.3d at 92.

In the present case, the County sent Plaintiffs a "Notice of Intent to Abate" on May 5, 2005, authorizing the abatement and removal from their property as a public nuisance "abandoned,

20

wrecked, dismantled, or inoperative vehicle[s] or parts thereof" if Plaintiffs did not take action to remedy the situation or request a hearing within ten-days.  FAC, Exh. B.[23]  The specific vehicles subject to abatement were identified and described in an attachment to the Abatement Notice.  FAC, Exh. C.  While Plaintiffs claim that they did not receive the County's Abatement Notice until May 27, 2005, because Mr. Hardy was "away on business," Plaintiffs concede that they were aware of the County's intent to abate the subject vehicles on May 27, 2005 and that the County did not begin removing vehicles until June 24, 2005, nearly one month later.  FAC ¶¶ 13-14.

Accordingly, because Plaintiffs did not take action to remedy the nuisance condition on their property or request a hearing within 10-days of receiving notice of the County's intent to abate the nuisance condition, and because Plaintiffs' failure to take advantage of the opportunity to request a hearing or abate the vehicles does not render the process provided to them constitutionally insufficient, this claim is dismissed.[24]  Moreover, notwithstanding Plaintiffs' failure to

---

[23] Documents attached to the Complaint are treated as part of the Complaint and may be considered in ruling on a Rule 12(b)(6) motion.  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

[24] While Plaintiffs assert that their due process rights were violated because the Abatement Notice failed to describe

request a pre-deprivation hearing, it is undisputed that they

the vehicles to be abated with sufficient particularly, FAC ¶ 26, the attachment to the Abatement Notice contradicts this assertion because it provides a description of the sixty-nine vehicles subject to abatement. FAC, Exh. C. Therefore, Plaintiffs had proper notice of the specific vehicles subject to abatement as a public nuisance. Additionally, to the extent that Plaintiffs assert that the County's Abatement Notice was deficient because it did not provide complete and/or accurate information regarding the condition of the vehicles subject to abatement, FAC ¶ 26, the plain language of the Abatement Notice belies this assertion. The Abatement Notice expressly states that the vehicles (or parts thereof) identified constitute a public nuisance as they have been determined to be either "abandoned, wrecked, dismantled or inoperative." FAC, Exh. B. Thus, even without knowing the precise complaint, any reasonable person would conclude that the County's Abatement Notice could be countered by a demonstration that the vehicles were in good operable condition. Finally, to the extent that Plaintiffs assert that the County violated their due process rights by failing to clearly inform them that they had 10-days from the date of the Abatement Notice to take corrective action in order to avoid abatement, the plain language of the Abatement Notice contradicts this assertion. FAC, Exh. B. The Abatement Notice clearly states that the County believed the vehicles (described in the attachment) to be either "abandoned," "wrecked," "dismantled," or "inoperative," and that Plaintiffs could avoid abatement by removing the vehicles or by requesting a public hearing within 10-days. FAC, Exhs. B, C. While the Abatement Notice does contain a handwritten note written by Deputy Cook stating that the removal of vehicles would commence on May 3, 2005 (FAC, Exh. B), this does not, as Plaintiffs argue, cancel the terms of the Notice. Reading the note in the light most favorable to Plaintiffs', it creates, at best, an ambiguity as to the removal date. It does not, however, create an inference that the terms of the Abatement Notice were cancelled. This is so because the Abatement Notice is dated May 4, 2005, the day after the handwritten note stated that removal would commence. Thus, by the time Plaintiffs' received the Abatement Notice Deputy Cook's note was meaningless and/or superseded by the written terms of the Abatement Notice. Regardless, Plaintiffs could have easily resolved this ambiguity by calling Deputy Cook (with the number provided in the handwritten note) anytime before abatement commenced on June 24, 2005, nearly two-months later.

were afforded a post-deprivation hearing to challenge the County's nuisance determination.[25]

For these reasons, Plaintiffs' due process claim is dismissed. Because amendment would be futile, this claim is dismissed with prejudice.[26]

---

[25] On July 20, 2005, Plaintiffs were granted an abatement appeal hearing following the removal of approximately seventeen vehicles from their property. FAC ¶ 14.6. At this hearing, the El Dorado County Zoning Administrator concluded that the vehicles were subject to abatement under the ordinance because they were "abandoned" and posed a threat to the public health, safety and welfare, in violation of the Vehicle Abatement Ordinance. Pl.'s Opp. to Def.'s Mt. to Dismiss at 11:22-27, 12:1-11; Def's Request for Judicial Notice, Exhs. 5-A, 5-B.

[26] To the extent that Plaintiffs seek to allege a due process claim on the basis that the County, through its Zoning Administrator, violated their due process rights by not permitting the presentation of certain evidence at the abatement hearing (FAC ¶ 29.5), such pleading is insufficient to state a cognizable due process claim. As discussed above, because Plaintiffs were afforded a pre-deprivation opportunity to be heard at a meaningful time and in a meaningful manner regarding the County's nuisance determination before being deprived of their vehicles, they cannot state a cognizable due process claim. Alternatively, such a claim is barred by the Rooker-Feldman doctrine because it seeks review of a state court action. See Mothershed, 410 F.3d at 607 (district courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional); Bianchi v. Rylaarsdam, 334 F.3d 895, 901 (9th Cir. 2003) (Rooker-Feldman bars any suit that seeks to disrupt or undo a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims); Noel, 341 F.3d at 1154 (under Rooker-Feldman, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court). Plaintiffs remedy for this alleged wrong was to seek judicial review as authorized under Cal.Civ.Pro.Code § 1094.5. See Noel, 341 F.3d

**E.   Third Claim: Unlawful Taking and Substantive Due Process Violation**

**1. Unlawful Taking**

Plaintiffs seek to state an unlawful taking claim based on the seizure and removal of vehicles from their property without just compensation.   However, because Plaintiffs' vehicles were seized and removed based on the County's determination that the vehicles constituted a public nuisance, Plaintiffs cannot state a cognizable takings claim because their vehicles were taken pursuant to a valid exercise of police power for which no compensation is due.   See City of Costa Mesa v. Soffer, 11 Cal.App.4th 378, 382-83 (1992); see also Porter v. Diblasio, 93 F.3d 301, 310 (7th Cir. 1996) (holding that no compensation is due for the state's seizure and disposal of neglected animals under the Takings Clause because it is "analogous to the state's

at 1154 (a party disappointed by a decision of a state court may seek reversal of that decision by appealing to a higher state court, then to the highest state court, and then to the United States Supreme Court, but never to a federal district court). Finally, to the extent that Plaintiffs seek to allege a due process claim on the basis that the County erred in concluding that their vehicles were "abandoned" (FAC ¶ 27), such pleading is insufficient to state a cognizable due process claim.   This claim is barred by the doctrine of collateral estoppel.   See Carter, 36 Cal. 4th at 1240.   The identical issue was necessarily decided against Mr. Hardy at the abatement hearing in a final judgment on the merits (FAC ¶ 14.6), from which Plaintiffs had the right to seek judicial review under Cal. Civ. Pro. Code § 1094.5.   Def.'s Request for Judicial Notice, Exhs. 5-A, 5-B, 9.   As such, Plaintiffs are barred from relitigating this issue.

traditional power to take action to abate a nuisance," for which the Fifth Amendment does not require compensation); Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 492 n.22 (1987) ("Courts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance.").[27]  Moreover, because the vehicles were not taken for public use, Plaintiffs are not entitled to compensation under the Fifth Amendment.  See Hernandez v. Lafayette, 643 F.2d 1188, 1200, n. 26 (5th Cir. 1981) (if private property is taken but not taken for public use, the property owner does not have a claim for compensation under the Fifth Amendment but may have a claim under § 1983 for deprivation of property without due process of law under the Fourteenth Amendment).

For these reasons, Plaintiffs' Fifth Amendment claim is dismissed.  Because amendment would be futile, this claim is dismissed with prejudice.

---

[27]  The Fifth Amendment prohibits the taking of "private property . . . for public use, without just compensation."  U.S. Const. amend. V.  "An allegation that private property for which no compensation is due has been taken is insufficient to sustain a Fifth Amendment claim because it is the taking without just compensation that is constitutionally prohibited."  Washington Legal Foundation v. Legal Foundation of Washington, 271 F.3d 835 (9th Cir. 2001); see Macri v. King County, 126 F.3d 1125, 1129 (9th Cir. 1997) ("The Fifth Amendment is not offended by the government taking property, but only by the government taking property without just compensation.") (citing Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985)).

## 2. Substantive Due Process

Plaintiffs seek to state a substantive due process claim predicated upon the County's purported unlawful taking of Plaintiffs' vehicles without just compensation and due process of law.  However, because the Fifth Amendment provides explicit limitations on the type of government conduct challenged by this claim, this Amendment, not the Fourteenth Amendment's guarantee of substantive due process, guides the analysis of Plaintiffs' claim.  See Armendariz v. Penman, 75 F.3d 1311, 1319 (9th Cir. 1996) (where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing a claim) abrogated on other grounds as recognized in Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 2007 WL 4225774 (9th Cir. 2007).[28]

For this reason, this claim is dismissed.  Because amendment would be futile, this claim is dismissed with prejudice.

_____

[28] "The Fifth Amendment's 'Takings Clause,' made applicable to the states through the Fourteenth Amendment, requires that 'private property [shall not] be taken for public use, without just compensation'.  The amendment also provides that '[n]o person shall be . . . deprived of . . . property, without due process of law.'"  Armendariz, 75 F.3d at 1320 (citations omitted).

**F.   Fourth Claim: Unreasonable Search and Seizure, Due Process Violation and Unlawful Taking**

Plaintiffs seek to state an unreasonable search and seizure claim against the County, Deputy Cook and Tony's Tow as well as due process and unlawful takings claims against the County. However, because the allegations stated in this claim are duplicative of the allegations set forth in claims one, two and three, dismissal of this claim is appropriate.  This claim does not allege facts supporting an independently cognizable claim for relief.[29]

For this reason, this claim is dismissed.  Because amendment would be futile, this claim is dismissed with prejudice.

**G.   Fifth Claim: Conspiracy**

Defendants argue that dismissal of Plaintiffs' conspiracy claim is appropriate because Plaintiffs did not allege facts sufficient to establish an agreement and a meeting of the minds among defendants to violate Plaintiffs' constitutional rights.

---

[29] This claim is titled "Violation of 42 U.S.C. § 1983."  To the extent that Plaintiffs seek to state a claim for violation of § 1983, this is improper.  See Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 617-18 (1979) (§ 1983 was enacted to ensure that an individual had a civil cause of action to redress deprivations of rights secured under the constitution, not to provide any substantive rights (i.e., there can be no claim for a violation of § 1983 because it is merely a remedy to redress constitutional violations and does not in itself provide for any rights, substantive or otherwise)).

To establish liability for a conspiracy to violate one's constitutional rights under § 1983, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights.   See Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).   "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage."   Id. (internal quotation marks, alteration, and citation omitted).   "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id.   "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."   Id. at 1302 (internal quotation marks omitted).

"To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."   Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989); see also Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004).   Conclusory allegations of conspiracy are not enough to support a § 1983 conspiracy claim. Burns, 883 F.2d at 821; Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989); see Harris v. Roderick, 126 F.3d

1189, 1195 (9th Cir. 1997) ("In order to survive a motion to dismiss, plaintiffs alleging a conspiracy to deprive them of their constitutional rights must 'include in their complaint nonconclusory allegations containing evidence of unlawful intent or face dismissal. . . .'"). A plaintiff can satisfy the heightened pleading standard required for § 1983 conspiracy claims by alleging "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights. . . ." <u>Harris</u>, 126 F.3d at 1196.

In the present case, the FAC alleges that the County, Deputy Cook, Tony's Tow and Bonanza illegally conspired to deprive Plaintiffs of their property in violation of their civil rights and their ownership rights. FAC ¶ 40. The FAC further alleges that in furtherance of this conspiracy the defendants agreed to seize thirty-one vehicles and cause ownership to be transferred to themselves or to others for value without providing Plaintiffs with just compensation or due process of law. Id. Such conclusory pleading is insufficient to satisfy the heightened pleading requirements for a § 1983 conspiracy claim. The allegations do not allege an agreement or meeting of the minds among the defendants to deprive Plaintiffs' of their

constitutional rights.[30]    Nor do the allegations set forth a basis by which a conspiracy could be inferred.

For these reasons, this claim is dismissed.

**H.    Sixth Claim: Intentional Infliction of Emotional Distress**

Tony's Tow and Bonanza argue that dismissal of this claim is appropriate because the FAC does not allege conduct that is so extreme and outrageous to exceed all bounds of that usually tolerated in a civilized community.

"The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Ross v. Creel Printing & Publishing Co., 100 Cal. App. 4th 736, 744-45 (2002); Tekle ex rel. Tekle v. U.S. 457 F.3d 1088, 1103 (9th Cir. 2006).

To state a cause of action for intentional infliction of emotional distress the plaintiff is required to show severe emotional distress resulting from outrageous conduct on the part

---

[30] For instance, Plaintiffs do not allege that Deputy Cook ever had any interaction with Tony's Tow or Bonanza before or after the removal of vehicles from their property.

of the defendant.   _Kiseskey v. Carpenters' Trust for So. California_, 144 Cal. App. 3d 222, 231 (1983).   Severe emotional distress means emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it.   _Id._   Behavior may be considered outrageous if a defendant: (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.   _Id._ at 230.   "The fact that conduct might be termed outrageous is not itself sufficient.   'The tort calls for intentional, or at least reckless conduct-- conduct intended to inflict injury or engaged in with the realization that injury will result.'"   _Ess v. Eskaton Properties, Inc._, 97 Cal. App. 4th 120, 130 (2002).   "The conduct must be of a nature that is especially calculated to cause mental distress of a very serious kind.   Moreover, to support the cause of action, '[i]t is not enough that the conduct be intentional and outrageous.   It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.'"   _Id._ (citation omitted).

In the present case, Plaintiffs' intentional infliction of emotional distress claim is premised upon Tony's Tow and Bonanza's participation in: (1) entering Plaintiffs' property without permission or consent and seizing thirty-one vehicles; (2) destroying and/or selling Plaintiffs' vehicles; and (3) conspiring to deprive Plaintiffs of their ownership rights in such vehicles.   FAC ¶ 42.   Plaintiffs allege that this conduct caused Plaintiff to suffer extreme mental distress, fright, terror, humiliation and embarrassment.   Id.   Such conclusory pleading is insufficient to state a cognizable intentional infliction of emotional distress claim against either Tony's Tow or Bonanza.   The FAC does not plead facts showing that Tony's Tow or Bonanza's conduct was outrageous, or that it was intentional or reckless conduct intended to inflict injury, or engaged in with the realization that injury will result, or that the conduct caused Plaintiffs to suffer severe or extreme emotional distress.   Moreover, the FAC is devoid of facts supporting the inference that the conduct was so severe that "no reasonable man in a civilized society should be expected to endure it."

For these reasons, this claim is dismissed.

**I.    Seventh Claim: Declaratory Relief Claim**

The County argues that dismissal of this claim is appropriate because there is no current, actual controversy between the parties, i.e., Plaintiffs do not have standing.

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A district court may issue a declaratory judgment only in "a case of actual controversy within its jurisdiction." Id. Here, Plaintiffs' declaratory relief claim seeks a declaration of the parties' respective rights and obligations regarding whether the County was required to obtain a warrant before entering Plaintiffs' property to inspect for a nuisance condition. FAC ¶ 44. Additionally, Plaintiffs seek a declaration of the parties' respective rights and obligations regarding whether the County can recover the costs it incurred in removing Plaintiffs' vehicles. Id. ¶ 46.

With respect to whether the County was required to obtain a warrant before entering Plaintiffs' property to inspect for a suspected nuisance condition, the court finds that Plaintiffs have alleged sufficient facts to state a cognizable declaratory relief claim. An actual controversy exists between the parties as to whether the County was, and is, required to obtain an

inspection warrant before entering and removing vehicles from Plaintiffs' property during the implementation of the Vehicle Abatement Ordinance.   Because this issue is likely to arise in the future, as Mr. Hardy intends on continuing to restore cars on his property (FAC ¶ 49), the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on this issue.   With respect to whether the County can recover the costs incurred in removing vehicles from Plaintiffs' property, the court finds that Plaintiffs have alleged sufficient facts to state a cognizable declaratory relief claim.   An actual controversy exists between the parties as to whether the County can recover the costs it incurred in removing vehicles from Plaintiffs' property pursuant to the Vehicle Abatement Ordinance.   Because this issue is likely to arise in the future, as Mr. Hardy intends on continuing to restore cars on his property (FAC ¶ 49), the parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on this issue.

For these reasons, dismissal of this claim is not appropriate.

**J.   Municipal Liability**

The County argues that dismissal of each and every § 1983 civil rights claim alleged against it in the FAC is appropriate

because there is no allegation that an official policy or custom of the County was the moving force behind the alleged constitutional deprivations.

"Local government entities are considered 'persons' for purposes of § 1983 and can be sued directly for monetary, declaratory, or injunctive relief where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'"   <u>Anderson v. Warner</u>, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting <u>Monell v. Dep't of Soc. Servs. of New York City</u>, 436 U.S. 658, 690 (1978)).   "To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"   <u>Oviatt v. Pierce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992); <u>Anderson</u>, 451 F.3d at 1070.   There also must be a "direct causal link" between the policy or custom and the injury, and plaintiff must be able to demonstrate that the injury resulted from a "permanent and well settled practice."   <u>Anderson</u>, 451 F.3d at 1070.   In order to be a "moving force" behind a constitutional deprivation, the

"identified deficiency" in a local governmental entity's policy must be "closely related to the ultimate injury." See Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1196 (9th Cir. 2002). "'In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Estate of Amos ex rel. Amos v. City of Page, Arizona, 257 F.3d 1086, 1094 (9th Cir. 2001).

In the present case, Plaintiffs allege that the County violated Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights in connection with the seizure and removal of vehicles from their property via the implementation of the Vehicle Abatement Ordinance. Specifically, Plaintiffs allege that the County violated their Fourth Amendment rights when Deputy Cook entered their property on or about April 26, 2005 and on or about May 5, 2005, without a warrant and without Plaintiffs' consent or permission, for the purpose of inspecting a nuisance condition pursuant to the County's Vehicle Abatement Ordinance. FAC ¶¶ 11, 11.5, 11.6, 21, 21.5.[31]   Additionally, Plaintiffs

_____

[31] The FAC states that "[t]his case concerns the wrongful taking of plaintiff' property by defendants. Plaintiffs property was taken by defendants in the course of the unconstitutional implementation of the County of El Dorado's Vehicle Abatement Program found at Chapter 10.16 of the

allege that the County violated their Fourth Amendment rights on June 24, 2005 when it directed Tony's Tow to enter their property for the purpose of removing vehicles without an inspection warrant and without Plaintiffs' consent or permission.   Id. ¶¶ 14, 22.   Finally, Plaintiffs allege that the County violated their Fourth Amendment rights in or about August 9, 2005 when Deputy Cook and Tony's Tow entered their property for the purpose of removing vehicles with an inspection warrant but without Plaintiffs' consent or presence as required by the warrant.  Id. ¶¶ 15, 23.

Based on the foregoing, the court concludes that Plaintiffs have alleged sufficient facts to support a cognizable Fourth Amendment claim against the County.   The allegations in the FAC sufficiently state that Tony's Tow and Deputy Cook's implementation of the Vehicle Abatement Ordinance was the moving force behind the Fourth Amendment deprivations.  See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (a § 1983 plaintiff may establish municipal liability by proving that an employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or

---

Municipal Code." FAC at 1:22-26.  The FAC further alleges that Deputy Cook's conduct in furtherance of his implementation of the Vehicle Abatement Ordinance was based on his interpretation that Section 10.16.040(B) of the Ordinance does not require an inspection warrant to enter Plaintiffs' property.  Id. ¶ 11.6.

custom which constitutes the standard operating procedure of the local governmental entity). Accordingly, dismissal of Plaintiffs' Fourth Amendment claim against the County is inappropriate.

With respect to Plaintiffs' Fifth Amendment claim, the court finds that, as discussed above, Plaintiffs cannot state a cognizable takings claim against the County because the vehicles were taken pursuant to a valid exercise of police power for which no compensation is due, and because the vehicles were not taken for public use.[32]   Finally, with respect to the Fourteenth Amendment, the court finds that, as discussed above, Plaintiffs cannot state a cognizable due process claim against the County because Plaintiffs were afforded a pre-deprivation opportunity to be heard at a meaningful time and in a meaningful manner regarding the County's nuisance determination before being deprived of their vehicles.

For these reasons, dismissal of Plaintiffs' Fourth Amendment claim against the County is inappropriate.   However,

_____

[32] Additionally, as discussed above, Plaintiffs cannot state a cognizable substantive due process claim against the County because the Fifth Amendment provides explicit limitations on the type of conduct challenged by this claim. See Armendariz, 75 F.3d at 1319 (where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing a claim).

dismissal of Plaintiffs' due process, substantive due process and takings claims against the County is appropriate. Because amendment of Plaintiffs' due process, substantive due process and takings claims would be futile, these claims are dismissed with prejudice.

**III. CONCLUSION**

For the reasons stated above, the motions to dismiss are **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

ENTERED this 28th day of January, 2008.

                         s/RALPH R. BEISTLINE
                         United States District Judge