IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM HARDY and DARLENE HARDY,<br><br>    Plaintiffs,<br>  v.<br>COUNTY OF EL DORADO, DEPUTY SHERIFF DAVID COOK, TONY'S TOW, BONANZA AUTO DISMANTLERS, and DOES 1 THRU 50,<br><br>    Defendants. | No. Civ. 2:07-CV-0799 JAM EFB<br><br><u>Memorandum of Opinion<br>       and Order</u> |

    This matter comes before the Court on Defendants County of El Dorado ("County"), Sheriff David Cook ("Cook"), and Tony's Tow & Transport, Inc.'s ("Tony's Tow") (collectively "Defendants") motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiffs Tim Hardy ("Hardy") and Darlene Hardy (collectively "Plaintiffs")

oppose the motions.  For the reasons set forth below,[1] Defendants' motions are GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are owners of a fenced and gated hilly two-acre residential property located in El Dorado County at 9711 Highway 193, Kelsey, California.  FAC ¶ 1.  The property is two-tiered, with an 800 square foot house and small backyard on the bottom level, which is separated from the upper level by a ledge and a hill approximately 60 feet.  Tony's Tow Statement of Undisputed Facts, Sept. 17, 2008, ("SUF") ¶ 2.  The entire property is fenced with materials which do not obstruct visibility from the highway into the property.  SUF ¶ 3.

In 2005, Hardy was storing vehicles on the upper level of the Plaintiffs' property.  Id. ¶ 7.  A majority of the vehicles stored on the upper level could be seen from the highway and all vehicles could be seen from the neighboring property.  Id. ¶ 8. In 2005, after receiving a complaint about cars stored on Plaintiffs' property, Sheriff David Cook whose responsibilities included implementing El Dorado County's vehicle abatement program, contacted Hardy to arrange a meeting and visit the property.  County and Cook's Motion for Summary Judgment

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

("Cook's Mot.") 3:14-20.  On May 3 or 4, 2005, while Hardy was present, Cook visited the property and tagged a number of vehicles for removal.  SUF ¶ 10.  On May 4, the County sent Plaintiffs a "Notice of Intention to Abate and Remove Abandoned, Wrecked, Dismantled, or Inoperative Vehicles or Parts Thereof as a Public Nuisance" ("Abatement Notice").  Id. ¶ 11.  The Abatement Notice advised Plaintiffs that the County would commence abatement of the vehicles listed and described in the attachment of the Abatement Notice if Plaintiffs failed to abate the vehicles or request a hearing within ten days.  Cook's Mot. 4:3-8.

On June 24, 2005, the County, through its towing contractor Tony's Tow, seized and removed approximately seventeen vehicles from Plaintiffs' property.  SUF ¶ 12.  All of the vehicles removed by Tony's Tow were located at the top of the hill and all had been tagged for removal by the County.  Id. ¶ 20.  Apart from opening the gate and driving on the road, all of Tony's Tow activities on the Plaintiffs' property were confined to the top of the hill.  Id. ¶ 22.

On August 9, 2005, Cook obtained a warrant from a Superior Court Judge that authorized entry onto the Plaintiffs' property without prior notice to and without the owner's presence, so long as not at night time.  Cook's Mot. 4:27-28; 5:1-2.  On August 11, 2005, Cook and Tony's Tow returned to the Plaintiffs'

property with the warrant for the purpose of completing the County's abatement request. SUF ¶ 25. Cook removed the gate from the hinge. Cook's Mot. 5:2-5. In Cook's presence, Tony's Tow removed the remaining vehicles which Cook had tagged for removal. SUF ¶ 27.

On April 26, 2007, Plaintiffs filed their original complaint. Docket ("Doc") # 3. The operative complaint in this matter is the first amended complaint, which contains seven separate causes of action. Doc. # 31. On January 19, 2008, the Court issued a comprehensive order which dismissed all causes of action except for Plaintiffs' first and fourth claims for relief for violation of their Fourth Amendment rights under 42 U.S.C. Section 1983, Plaintiffs' seventh cause of action for declaratory relief against County, and Plaintiffs' municipal liability claims only as they pertain to the alleged Fourth Amendment violations. Doc. # 58. In the instant motions, Defendants' seek summary judgment on Plaintiffs' remaining claims.

## II.  OPINION

A. <u>Legal Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims and defenses." <u>Cleotex v. Catrett</u>, 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 447 U.S. 242, 248-49 (1986). If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e) and citing <u>Celotex</u>, 477 U.S. at 323). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-moving party]." <u>Anderson</u>, 477 U.S. at 252. This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

B. Fourth Amendment

Plaintiffs bring claims against Tony's Tow, Cook, and the County pursuant to 42 U.S.C. § 1983 for violations of their Fourth Amendment rights to be free from unreasonable search and seizure. Defendants move for summary judgment on the ground that Plaintiffs' claims fail as a matter of law.

1. Fourth Amendment Claims Against Tony's Tow

Plaintiffs claim Tony's Tow violated their Fourth Amendment rights on June 24, 2005 and again in August of 2005 by entering Plaintiffs' property for the purpose of seizing vehicles pursuant to El Dorado County's vehicle abatement program without a warrant. FAC ¶¶ 20-23. The Fourth Amendment's warrant requirement applies to entries onto private premises to search for and abate suspected or declared nuisances. Michigan v. Tyler, 436 U.S. 499, 504-05 (1978); Connor v. City of Santa Ana, 897 F.2d 1487, 1490 (9th Cir. 1990). "[E}xcept in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." Conner, 897 F.2d at 1491.

One such clearly recognized exception to the warrant requirement pertains to the "open fields" doctrine. The

requirement for a warrant exists only for searches conducted or entry onto a realm where a person has a legitimate expectation of privacy which society recognizes as reasonable. Katz v. United States, 389 U.S. 347, 361 (1967). The Ninth Circuit has held that an otherwise lawful warrantless abatement does not violate the Fourth Amendment if the vehicle is abated from "open fields" in which the owner does not have a reasonable expectation of privacy. Schneider v. County of San Diego, 28 F.3d 89, 91-92 (1994), *cert denied*, 513 U.S. 1155 (1995)(noting that "any asserted expectation of privacy in open fields is not an expectation that society recognizes as reasonable").

Under the "open fields" doctrine, a court must determine whether that area of the seizure was within the curtilage of the home. United States v. Dunn, 480 U.S. 294, 300-301 (1987). The Supreme Court provided a four-factor test for determining the scope of the curtilege in United States v. Dunn: (1) the nature and use of the area; (2) the proximity of the area to the home (3) whether the area is enclosed; (4) whether steps were taken to protect the area from observation. Dunn, 480 U.S. at 301-02. Applying these factors to the upper level of Plaintiffs' property where Hardy stores his vehicles, the Court finds the area lay outside the curtilege of the Plaintiffs' home.

Here, the area where the vehicles were stored is removed from Plaintiffs' house by a ledge and a 60 foot hill. Although

Plaintiffs may have intended to keep the area private, "[a]n intent to maintain privacy . . . does not necessarily establish a constitutionally protected area of privacy." United States v. Van Damme, 48 F.3d 461, 464 (9th Cir. 1995).  Here, most of the property was shielded by a fence through which the public could easily see.  While the fence may have been intended to keep out trespassers, it was not intended to shield the property from public view.  Two-thirds of the vehicles were visible from the highway and all were visible from the neighbor's property.  Plaintiffs have not demonstrated an actual, subjective expectation of privacy in the area which Tony's Tow entered, as Plaintiffs permitted the vehicles to be visible to the public.  Thus, the "open fields" doctrine applies in this matter and defeats Plaintiffs' Fourth Amendment claim against Tony's Tow as a matter of law.  Accordingly, Tony's Tow's motion for summary judgment is GRANTED.

   2. Fourth Amendment Claims Against Cook

   Plaintiffs claim Cook violated their Fourth Amendment rights by entering their property on or about April 26, 2005, May 3 or 4, 2005, June 24, 2005, and in August of 2005.  Cook argues he entered Plaintiffs' property on two occasions: once on May 3 or 4, 2005, pursuant to Hardy's consent and based upon the "open fields" doctrine, and again on August 11, 2005, pursuant to a valid warrant.

Although Plaintiffs allege Cook entered their property on April 26, 2005, Plaintiffs do not present evidence demonstrating that any person witnessed Cook on their property on that date nor that the property had any indication which suggested a person was present on that date.  Plaintiffs rely solely on Cook's affidavit in support of the application for warrant which states April 26, 2005 as the date of a prior visit to their property.  Pls' Opp. 17:5-23.  Cook's mention of April 26, 2005 as the date when he went to the Plaintiffs' property, met with Hardy, inspected the area, and tagged the vehicles, appears to be an error.  Even Plaintiffs admit the first meeting with Hardy was on or about May 3 or 4, 2005.  Plaintiffs' mere "scintilla of evidence" in support of their position that Hardy entered the property on April 26, 2005 is insufficient for a jury to reasonably find for Plaintiffs.  Accordingly, Cook is granted summary judgment on Plaintiffs' Fourth Amendment claims related to entry or search on April 26, 2005.

It is undisputed that Hardy entered Plaintiffs' property on or about May 3 or 4, 2005 without a warrant.  The issue in the present case is whether Hardy was acting under an exception to the Fourth Amendment warrant requirement when he entered Plaintiffs' property on May 3 or 4, 2005.

It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon

probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Katz v. United States, 389 U.S. 347, 357 (1967).  It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.  Schneckloth, 412 U.S. at 219; Davis v. United States, 328 U.S. 582, 593-594 (1946).  A warrantless entry is not unreasonable under the Fourth Amendment where an individual has voluntarily consented to the entry.  Id.; United States v. Vaneaton, 49 F.3d 1423, 1426-1427 (9th Cir. 1995).  "The question whether a consent to search was in fact 'voluntary' or was a product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." Schneckloth, 412 U.S. at 227; United States v. Garcia, 997 F.2d 1273, 1281 (9th Cir. 1993).

   Here, the undisputed evidence establishes that Hardy consented to Cook's investigation of Plaintiffs' property. Although Hardy asserts he did not willingly consent to Cook's inspection, Hardy's actions implied his consent.  Cook called Hardy to arrange a meeting for inspecting a potential violation of the County ordinance, Hardy asked to be present during the inspection, and the two set a prearranged meeting at the

Plaintiffs' property.  Cook's Mot. 3:14-20.  On the date of the meeting in May, Hardy opened the gate leading to the driveway so Cook could drive onto the property, Cook announced his desire to inspect the property, and for more than an hour while Cook walked around the property Hardy never followed him nor asked him to leave.  Id. 3:21-26; 4:1-3.  The Court concludes that given the totality of the circumstances, Hardy's actions were sufficient to infer consent to enter and inspect the property.  Accordingly, Cook did not violate Plaintiffs' Fourth Amendment rights when he entered and search their property in May of 2005.

    Moreover, as stated above, based on the "open fields" doctrine, Plaintiffs did not have a reasonable expectation of privacy in the property searched. As with Plaintiffs' claims against Tony's Tow, the "open fields" doctrine clearly applies and defeats Plaintiffs' Fourth Amendment claims against Cook, including Cook's entry in May 3 or 4, 2005 entry and the June 24, 2005 entry which Cook authorized Tony's Tow to perform.

    Finally, Plaintiffs argue Cook violated their Fourth Amendment rights in August of 2005 when he entered their property to remove the abandoned vehicles.  Pls' Opp. 16:20-21; 17:17-19.  Again, Plaintiffs' had no reasonable expectation of privacy in the property searched or the items seized because the abandoned vehicles were stored in an "open field" and subject to the County Vehicle Abatement Ordinance.  Moreover, as to the

August 11, 2005 search and seizure of vehciles, Cook had obtained a warrant from the California Superior Court authorizing entry onto Plaintiffs' land for the purpose of enforcing the County Vehicle Abatement Ordinance.  Cook's Mot. 4:27-28; 5:1-2.  Plaintiffs' have not alleged enough evidence for a reasonable jury to conclude that Cook violated any of Plaintiffs' Fourth Amendment rights.  Accordingly, as a matter of law, Cook's motion for summary judgment is GRANTED.

    3. Municipal Liability

Plaintiffs assert that the County of El Dorado is liable under 42 U.S.C. § 1983 for the customs and practices in its vehicle abatement ordinance, which led to the unreasonable search and seizure of Plaintiffs' property in violation of their Fourth Amendment rights.  Municipalities and local governments can be sued directly for violations of constitutional rights under § 1983 where government officials were acting pursuant to an official policy or recognized custom.  Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690 (1978).  To directly sue a municipality under § 1983, a plaintiff must show that (1) she had a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation.  Oviatt v. Pierce, 954 F.2d 1470, 1474

(9th Cir. 1992). If plaintiffs have suffered no constitutional injury at the hands of the individual officers, any claim to challenge the nature of the city policies or practices is irrelevant. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Here, as stated above, the undisputed evidence established that Plaintiffs' Fourth Amendment rights were not violated. Absent a violation of constitutional rights, the County cannot be held liable. Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) (finding that "while the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights"). Thus, because Plaintiffs were not subjected to an unreasonable search or seizure in violation of the Fourth Amendment, this Court is precluded from finding liability against the County. Accordingly, the County's motion for summary judgment pursuant to Plaintiffs' Monell claims is GRANTED.

C. Declaratory Relief

Defendants argue Plaintiffs lack standing to present a declaratory relief claim. Cooks' Mot. 10:20-28; 11:1-18. The Court need not address Plaintiffs' standing to bring a declaratory relief claim because even assuming Plaintiffs have standing, no such relief would be granted where Plaintiffs' have not suffered a cognizable injury. Lujan v. Defenders of

<u>Wildlife</u>, 504 U.S. 555, 560 (1992).  As stated above, Plaintiffs' Fourth Amendment rights have not been violated.  Defendants were permitted to enter and search Plaintiffs' property pursuant to consent, the open fields doctrine, and the August 9, 2005 warrant.  Defendants were permitted to seize the tagged, abandoned vehicles pursuant to the County Vehicle Abatement Ordinance.  Accordingly, the County's motion for summary judgment as to Plaintiffs' claim for declaratory relief is GRANTED.

D. <u>Qualified Immunity</u>

Defendants assert Deputy Sheriff Cook is entitled to qualified immunity.  Cook's Mot. 11:19-28; 12:1-28; 13:1-14.  Qualified immunity is a defense to lawsuits against governmental officials arising out of the performance of their duties.  Its purpose is to permit such officials to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 819 (1982); <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967).  When a law enforcement officer asserts qualified immunity, the inquiry is first whether, "taken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201

(2001). If so, the court must determine whether the right violated was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. If the Court concludes that both of these inquires are answered in the affirmative, the officer is not entitled to qualified immunity. Id. at 201.

Here, in assessing the facts in the light most favorable to Plaintiffs, the facts alleged do not demonstrate that Cook's conduct violated a constitutional right. Accordingly, Cook is entitled to qualified immunity.

### III. ORDER

For the reasons set forth above, Defendants' motions for summary judgment are GRANTED and Deputy Sheriff David Cook is entitled to qualified immunity.

IT IS SO ORDERED.

Dated:   November 13, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE